UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. FRANCIS SADOWSKI,              )<br>                                    )<br>    Plaintiff,                     )<br>                                    )<br>v.                                  )<br>                                    )<br>                                    )<br>DENTIST PROFITS, INC.,              )<br>and JOHN DOES 1-10,                 )<br>                                    )<br>    Defendants.                     ) | No.<br><br>FILED: APRIL 11, 2008<br>08CV2088         TC<br>JUDGE KENNELLY<br>MAGISTRATE JUDGE COLE |

### DEFENDANT'S NOTICE OF REMOVAL

Defendant Dentist Profits, Inc. ("Dentist Profits") hereby removes to this Court the state action described below.

1.  On or about March 7, 2008, Plaintiff Dr. Sadowski ("Plaintiff") brought an action in the Circuit Court of Cook County, Illinois, entitled *Dr. Francis Sadowski v. Dentist Profits, Inc., and John Does 1-10*, Case No. 07 CH 15899.

2.  Dentist Profits received service of the summons and complaint on March 14, 2008. This notice therefore is timely under 28 U.S.C. § 1446(b).

3.  A copy of all of all process, pleadings, and orders served upon Dentist Profits in the state court are attached hereto as Exhibit A.

4.  This is a civil action in which this Court has original jurisdiction under 28 U.S.C. § 1331, as the action is founded on a federal statute, the Telephone Consumer Protection Act, 47 U.S.C. § 227. Therefore, pursuant to 28 U.S.C. § 1441(a), Dentist Profits may remove this action to this Court. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) ("removal is authorized . . . by § 1441, because the claim arises under federal law").

5.  Pursuant to 28 U.S.C. § 1441(c), Plaintiff's non-federal law claims for common law conversion and for violation of the Illinois Consumer Fraud Act are also removable to this Court.  Federal law predominates on all matters alleged in the complaint.

6.  Although Plaintiff included John Does 1-10 as nominal defendants in this action, there are no defendants in this action other than Dentist Profits who received service of a summons and complaint.

7.  Dentist Profits' counsel has signed this notice pursuant to Rule 11 of the Federal Rules of Civil Procedure.

                            Respectfully submitted,

                            DENTIST PROFITS, INC.

                            By /s Jay R. Hoffman
                               Its Attorney

Jay R. Hoffman  (No. 6193213)
Suite 1800
303 West Madison Street
Chicago, IL 60606
(312) 899-0899
jay@hoffmanlegal.com

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, Chancery DIVISION

(Name all parties)

DR. FRANCIS SADOWSKI,

v.

DENTIST PROFITS, INC.,
and JOHN DOES 1-10,

No. _____

Dentist Profits, Inc.
c/o R. Michael Brown, registered agent
411 W. University Ave
Champaign, IL 61820

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 41106
Name: Edelman, Combs, Latturner, & Goodwin, LLC
Atty. for: Plaintiff
Address: 120 S. LaSalle Street
City/State/Zip: Chicago, IL 60603
Telephone: (312.739.4200)

WITNESS, _____

MAR 07 2008

DOROTHY BROWN
Clerk of Court

Date of service: 3-14-08
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: (312) 419-0379
(Area Code) (Facsimile Telephone Number)

BB
3-14-08

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| DR. FRANCIS SADOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DENTIST PROFITS, INC., | ) |
| and JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.  Plaintiff Dr. Francis Sadowski brings this action to secure redress for the actions of defendant Dentist Profits, Inc., in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.  The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

1

## PARTIES

3. Plaintiff Dr. Francis Sadowski is an individual with offices at 19815 Governors Highway, Suite 7, Flossmoor, IL 60422, where he maintains telephone facsimile equipment.

4. Defendant Dentist Profits, Inc., is a Illinois corporation that does business at 10327 South Western Avenue, Chicago, Illinois 60643.

5. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

   a. Have committed tortuous acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

   c. Are located in Illinois.

## FACTS

7. On February 05, 2008, plaintiff Dr. Francis Sadowski received the unsolicited fax advertisement attached as Exhibit A on his facsimile machine.

8. Discovery may reveal the transmission of additional faxes as well.

9. Defendant Dentist Profits, Inc., is responsible for sending or causing the sending of the faxes.

10. Defendant Dentist Profits, Inc., as the entity whose products or services

were advertised in the faxes, derived economic benefit from the sending of the faxes.

11.  Each fax refers to a website used by defendant Dentist Profits, Inc.

12.  Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

13.  On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

14.  On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

15.  There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

16.  Furthermore, the "opt out notice" required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship was not provided in the faxes at issue.

## COUNT I – TCPA

17.  Plaintiff incorporates ¶¶ 1-16.

18.  The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

19.  The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

3

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

20. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

21. Plaintiff and each class member is entitled to statutory damages.

22. Defendants violated the TCPA even if their actions were only negligent.

23. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

24. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Dentist Profits, Inc. promoting its goods or services for sale (d) and who did not (according to defendant's records) either (i) have an established business relationship with defendant Dentist Profits, Inc. or (ii) expressly consent to the receipt of advertising faxes from defendant Dentist Profits, Inc., and in either case were also provided an "opt out" notice that

4

complies with federal law.

25. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

26. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which defendants compiled or obtained their list of fax numbers;

    c. Whether defendants thereby violated the TCPA;

    d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    e. Whether defendants thereby converted the property of plaintiff.

27. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

28. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

29. Several courts have certified class actions under the TCPA. Travel 100 Group, Inc. v. Empire Cooler Service, Inc., 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); Rawson v. C.P. Partners LLC, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. App. 2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

30. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unsolicited fax advertising;

    d. Costs of suit;

    e. Such other or further relief as the Court deems just and proper.

### COUNT II – ILLINOIS CONSUMER FRAUD ACT

31. Plaintiff incorporates ¶¶ 1-16.

32. Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

6

33. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

34. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

35. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

36. Defendants engaged in such conduct in the course of trade and commerce.

37. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

38. Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

39. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

7

40. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 3 years prior to the filing of this action, and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Dentist Profits, Inc. promoting its goods or services for sale (d) and who did not (according to defendant's records) either (i) have an established business relationship with defendant Dentist Profits, Inc. or (ii) expressly consent to the receipt of advertising faxes from defendant Dentist Profits, Inc., and in either case were also provided an "opt out" notice that complies with federal law.

41. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

42. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendants thereby violated the TCPA;

    c. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d. Whether defendants thereby converted the property of plaintiff.

43. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which

8

might cause them not to vigorously pursue this action.

44. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

45. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

46. Plaintiff incorporates ¶¶ 1-16.

47. By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

48. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

49. By sending the unsolicited faxes, defendants appropriated to their own use

the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

50. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

51. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

52. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

53. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Dentist Profits, Inc. promoting its goods or services for sale (d) and who did not (according to defendant's records) either (i) have an established business relationship with defendant Dentist Profits, Inc. or (ii) expressly consent to the receipt of advertising faxes from defendant Dentist Profits, Inc., and in either case were also provided an "opt out" notice that complies with federal law.

54. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

55. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common

10

questions include:

  a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

  b. Whether defendants thereby violated the TCPA;

  c. Whether defendants thereby committed the tort of conversion;

  d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

  e. Whether defendants thereby converted the property of plaintiff.

56. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

57. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

58. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

  a. Appropriate damages;

  b. An injunction against the further transmission of unsolicited fax

11

advertising;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems just and proper.

/s/ Daniel A. Edelman

Daniel A. Edelman
Michelle R. Teggelaar
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

T:\20977\Pleading\Complaint_Pleading.wpd

12

## NOTICE OF LIEN

       Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT A

n.O'keif Marketing To: Francis Sadowski (17087981635)     16:32 02/05/08GMT-05 Pg 02-02

With that said: I'm here to tell you that I've found a jewel in the rough. Literally a guy who is making over $7,000,000.00 a year by using virtually unknown internet marketing strategies that he has put on auto-pilot.

I know this sounds too good to be true. I wouldn't have believed it if I didn't see it for myself...and I've arranged a way for 49 of the first Dentists to respond to be "let in", behind the curtain, to see how Mr. X is making such huge sums of money...and how YOU can too!

Before you opt-in to request information.... I first must tell you what Mr. X's secrets are not:

- It is NOT a Multi-Level marketing or pyramid scheme! Nope...you won't have to go out and recruit anyone to do anything!

- It is NOT selling herbs, chocolates, or vitamins to your patients! Nope...this is completely separate from your practice...and will show you how to make money outside of your practice (in private if you wish)!

- It is NOT selling real estate! While selling real estate is a great thing...it is too much work compared to what Mr. X does!

- You Don't Need Any Employees To Implement What Mr. X will show you! Seriously, I'm currently implementing what he has taught me, on my spare time (which there is almost none) and I'm already making money using his secrets. Plus, I have taught my brother (who knows zilch about marketing or the internet)...and my assistant how to implement his instructions!

- You don't need to know anything about technology or the Internet!
Mr. X and myself are literally technological dummies...however, he'll show you how to get everything done-for-you. The 'magic' is not in the technological knowledge, but finding where the money is...and capitalizing on it!

- You don't need to have a product to sell! Mr. X will show you his 2 step process for identifying HOT and profitable target markets online...and how you can capitalize on them for less than a $100 bucks! You can't even place a Free Standing Insert or run an ad for that little amount of dollar. However, online, you can test a market to see if it's even profitable or not!

## What is IT?

Now, that I told you everything that it's NOT, I guess I'll share a little bit about what "it is". Well, I'm going to make you register for the FREE Webinar that Mr. X and I have planned for you...plus some surprise bonuses that you can use to implement toward your practice immediately...and to the new markets we help you identify online.

But what I will ask you to do is this: Imagine with me for a moment a time in your near future where you don't have to wake up to go to work. Where you can wake up after a full good nights sleep...run to starbucks for a good cup of coffee, then stroll into your home office.

Fire up your laptop and check your email. You click on your send/receive button and you start seeing the emails pour in that read: "New Order", "New Order", "New Order" plus 10 more of them that came in.

### These all came in overnight while you were sleeping!!!

But that is ONLY the start of it...the orders continue to come in throughout the day... and you didn't have to speak to one staff member. You didn't have to see one patient...and you didn't have to deal with insurance companies controlling your money, or poor quality patients who don't accept treatment. All the things you hate about doing business now...can and will be a thing of the past.

Mr. X will show you precisely how you can have an ongoing, never ending stream of income...that is flooding into your bank account automatically!

### What Is The Next Step?

Okay, well, that's enough for now. The next step is to get registered for the FREE Webinar that Mr. X and I will be putting on for you. We will share some precious nuggets that will transform your ability to make money!

Please fill out the entire form below as we have some surprise special bonuses for you that we'll be sending you via email and regular US mail! Remember, we are only going to be sharing these secret strategies with 49 Dentists...so please register now!

To Get "IN" on this TOP SECRET INFO...simply go to:

## www.dentistprofits.com/mrx.html

or fax this page back to 773-779-3471

Name: _____  Fax: _____

ILO Keh Marketing To: Francis Sadowski (17087591855)    16:32 02/05/08GMT-05 Pg 01-02

REQUESTED INFORMATION!
PLEASE MAKE SURE THE DOCTOR RECEIVES THIS!
Ed O'Keefe Makes A Bold Claim...

# "This Man, Mr. X, Will Make You Want To Quit Practicing Dentistry And Start Making More Money...Right Now!"

Discover His Ridiculously Simple, *Yet Little Known,* Money Making Secret For Making Over $7,000,000.00 A Year Online...

## With Just 2 Employees!

From: Ed O'Keefe
President of Dentist Profits, Inc
Dear Doctor,

It's rare that I come across 'true' money making secrets. As you probably know, I'm in Dan Kennedy's Platinum Mastermind Group with some of the brightest minds in the planet.

I spend well over $100,000 a year hiring consultants and studying what the best marketers and money makers on the planet are doing.

But I'm here to tell you that I've found a jewel in the rough. Literally a guy who is making over $7,000,000.00 a year by using virtually unknown Internet marketing strategies that he has put on auto-pilot.

He is making money while he is sleeping...continually growing...and literally on auto-pilot.

Needless to say, when I visited Mr. X...I was blown away...and inspired at the same time. Before, I move forward, let me tell you that I wouldn't have believed him, if I didn't see it myself. His house.(have you been to a house that had a 1000 gallon tank built into the wall with a shark swimming in it? Yes, a real shark like you see in the movies)

My wife actually didn't believe me when I first told her this...she thought I meant like a shark the size of my finger or something crazy. This shark was big...it could kill me☺

His cars( Aston Martin, his and her Range Rovers and more, just like you see in the Robb Report)...and then travel with him on a trip where I literally thought I was with Donald Trump.

---
## Go To: www.dentistprofits.com/mrx.html
## For all the Details FREE!
---

Why? Because everything was first class, VIP (our hotel suite was 4200 square feet) that's bigger than most people's houses, and people were "at our service"! Anytime we wanted anything. Wham! It was there. "(our suite really had a dedicated butler-talk about nice)!

**CERTIFICATE OF SERVICE**

     Jay R. Hoffman, an attorney, certifies that on April 11, 2008, he caused the foregoing pleading to be served by first-class U.S. mail on the following attorney:

Julie Clark
Edelman, Combs, Latturner & Goodwin
120 South LaSalle Street, 18th Floor
Chicago, IL 60603

                                                       s/ Jay R. Hoffman